MARCH TERM, 1874. 709

Copper Mining Co. *v.* Ormsby, and Ormsby *v.* Copper Mining Co.

VERMONT COPPER MINING COMPANY *v.* ROBERT McK. ORMSBY ;
AND CROSS-BILL, ROBERT McK. ORMSBY *v.* VERMONT
COPPER MINING COMPANY.

[ IN CHANCERY. ]

*Equitable Estoppel. Asquiescence. Jurisdiction of Court of Equity and of Law.*

It is altogether outside of the province and functions of a court of equity, to enforce a forfeiture.

In all cases where the facts relied upon amount to an equitable estoppel to effect a legal title, they are as available for that purpose in a court of law as in equity, and resort to a court of equity in such cases is unwarranted.

APPEAL from the court of chancery. The bill alleged that the orator was a corporation created by an act of the legislature approved November 18, 1853, for the purpose of carrying on the business of mining and smelting copper ore in Vershire, Vermont, with a nominal capital of $500,000, divided into shares of five dollars each ; that afterwards, in the same year, it duly organized under said charter, by the election of officers and the adoption of by-laws ; that for the purpose of paying the debts of the company, and to provide means for working its mine, assessments were from time to time laid upon the capital stock, and collected, under the by-laws of the company, and by virtue of the general statutes of Vermont, relating to corporations ; that up to about 1864, such assessments were laid at stockholders' meetings called and held in the city of New York, and were levied by the directors at their meetings held in said city ; that about 1864, the attention of the company was first called to the question of the validity of its corporate acts done out of this state, but no objection was ever raised against their validity, until raised by the defendant in the proceedings connected with this suit ; that in the years 1855, 1856, and 1857, small assessments of a few cents on each share, were, from time to time, authorized by the stockholders at such meetings, and levied by the directors at meetings held at the

office of the company in New York, to provide means for the payment of the debts of the company, and for carrying on its works ; that at the time of laying said assessments, L. L. Lombard, J. E. Smith, Fulton Cutting, original corporators of said company, and Charles Durand and Charles I. Gilbert, were each owners of a large number of the shares in said company, all of which were assessed as above stated, certain of which shares of each were declared forfeit in due course for non-payment of said assessments, and were sold at auction at the Merchants' Exchange in the city of New York, on due notice, agreeably to the by-laws of the company and the statute laws of Vermont, and that the shares so sold were duly transferred upon the books of said company, to the purchasers thereof, and new scrip issued therefor to such purchasers, and that the old scrip remained in the hands of the original owners ; that said Lombard, at the time of laying said assessments on his said shares, was a director of the company, was present at the stockholders' meeting when the same were laid, moved the assessments, voted for them, and afterwards, at a directors' meeting, voted to call in that part of the said assessments for non-payment of which a portion of his stock, now in question, was afterwards declared forfeited, and was sold ; that upon a part of said stock said Lombard paid said assessments ; that he was present at the sale of that part of his stock which was sold, and assented to it; that he continued a director of the company a considerable time after said sale, and a stockholder for a longer time ; bought and sold stock of the company ; attended and took part in stockholders' and directors' meetings, and during all that time, a period of fourteen years, made no objection to the sale of his said stock, nor laid any claim to it, and declared to the defendant Ormsby, at the time of his purchase of the original scrip, that it was worthless ; that the stock of the said Smith, Gilbert, and Durand, was in like manner assessed, declared forfeited, and sold, on due and legal notice ; that said owners of said stock were seasonably apprised of all said proceedings, and took part in some or all of them, and have ever since acquiesced therein ; that at the time of said assessments and sales, the condition of the company was such that the stock was considered by the own-

ers of it, of little or no value, and the same was sold for less than the assessments; that shortly prior to October 1867, the defendant Ormsby became possessed of the original certificates of the stock so sold, of the said Lombard, Gilbert, and Cutting, by purchase, and claimed to own the said stock of Smith and Fulton by virtue of sale on execution in suits instituted by said Ormsby, and purchased in all cases for a mere nominal sum; that thereupon said Ormsby claimed to be admitted to the rights and privileges of a stockholder in said company as owner of said original certificates, and as purchaser under said sheriff's sales; that said Ormsby, at the time of his purchase of said certificates, and said levy upon and sale of said stocks, was knowing to all the facts above stated; that all his said purchases were on speculation, and at a mere nominal cost; and that he had then pending in Orange county court a suit against the orators to recover damages on account of the refusal of the officers of the company to recognize him as a stockholder, and for the conversion of said original stock as aforesaid.

The prayer of the bill was, that the sale of the said stock under said forfeiture be established, and said Ormsby perpetually enjoined from setting up any claim to the same, and for general relief.

The defendant filed answer, admitting said assessments, forfeitures, and sales, as alleged, but denying their validity, because of the laying and levying of the same in New York; admitting knowledge of the facts alleged in the bill at the time of his purchase of said certificates, and that he bought for nominal consideration, on speculation, not claiming thereby any greater right than his grantees possessed.

The defendant also, after answer, filed his cross-bill, praying for an adjustment of the assessments on said stock in connection with the dividends since declared, and for general relief, which was duly answered by the orators. The answer being traversed, and testimony taken and filed, on hearing, PECK, Ch., rendered decree *pro forma*, dismissing both the bill and cross-bill. From this decree, the orators in the original bill appealed.

*R. Farnham* and *C. W. Clarke*, for the orators.

The participation of the original stockholders, under whom the defendant claims, in the assessments, forfeitures, and sales of the stock in question, and their long acquiesence in the transaction, as established by the testimony, create a bar by way of equitable estoppel, to the claims of the defendant. 2 Smith Lead. Cas. 642, 660; *Hatch* v. *Kimball*, 16 Me. 146; *Rangely* v. *Spring*, 21 Me. 130 ; *Pickard* v. *Sears*, 6 A. & E. 469 ; *Cox* v. *Buck*, 3 Strob. 367 ; *Thompson* v. *Blanchard*, 4 Comst. 303 ; *Brewster* v. *Baker*, 16 Barb. 613 ; 2 Story Eq. Jur. § 1546 ; *Robinson* v. *Justice et al.* 2 Penn. 19 ; *Proctor* v. *Keith*, 12 B. Mon. 252 ; *Stroble* v. *Smith*, 8 Watts, 280 ; *Commonwealth* v. *Sherman*, 6 Harris, 343 ; *Smith* v. *Warden*, 7 Harris, 424 ; Angell & Ames Corp. 342, 359 ; 1 Redf. Railw. 573 ; *Pendergast* v. *Tarten*, 1 Y. & Col. 98. The want of authority was removed by the subsequent ratification and acquiesence of the corporation. 2 Smith Lead. Cas. 756 ; *Buckley* v. *Derby Fishing Co.* 2 Conn. 252 ; *Peck* v. *New London In. Co.* 22 Conn. 557 ; and what may be bad as a by-law, may be good as a contract. Angell & Ames Corp. § 342 ; *Stetson* v. *Kempton*, 13 Mass. 282 ; *Davis* v. *Proprietors of Meeting House in Lowell*, 8 Met. 321 ; *Slee* v. *Bloom*, 19 Johns. 456 ; *Cooper* v. *Frederick*, 9 Ala. 738.

The bill does not seek to have a forfeiture declared and enforced by this court, but only to perpetually restrain the defendant, on the peculiar circumstances and equity of the case, from questioning at law the forfeiture and sale of the stock ; and the facts fully justify the interference of a court of equity to grant the protection here invoked. Angell & Ames Corp. § 342 ; 1 Redf. Railw. 618, 563 ; *Carncross* v. *Lorimer*, 7 Jur. N. S. 118 ; Story Eq. Jur. § 1546 ; Ib. § 1325 ; *Prosser* v. *Edmonds*, 1 Y. & Col. 481.

*R. McK. Ormsby*, *pro se.*

I.   The orators seek to establish the irregular sale of forfeited stock.   Equity will not aid to enforce a forfeiture.   Story Eq. Jur. § 1319 ; *Livingston* v. *Thompson*, 4 Johns. Ch. 431 ; *Pop-*

*ham* v. *Bampfield*, 1 Vern. 83 ; *Cary* v. *Bertie*, 2 Vern. 339 ; 1 Fonb. Eq. ch. 6, § 5 ; *Horsburg* v. *Baker et al.* 1 Pet. 233.

II. The assessments were unauthorized. Angell & Ames Corp. §§ 345, 356, 554 ; *In re Long Island R. R. Co.* 19 Wend. 37 ; *Harkimer M. & H. Co.* v. *Small*, 21 Wend. 273 ; *Bissell* v. *Michigan Southern R. R. Co.* 22 N. Y. 281 ; Willcock Corp. 42 ; *Rex* v. *Liverpool*, 2 Burr. 734 ; *Bank of Augusta* v. *Earle*, 13 Pet. 519, 598 ; *Miller* v. *Ewer*, 27 Me. 509. As to acquiescence. *Owings* v. *Hull*, 9 Pet. 607 ; *Hays* v. *Stone*, 7 Hill, 126 ; *Copeland* v. *Mercantile Ins. Co.* 6 Pick. 198 ; *Stetson* v. *Kempton*, 13 Mass. 272 ; *Pierce* v. *Benjamin*, 14 Pick. 356 ; *Preston* v. *Boston*, 12 Pick. 7 ; *Libby* v. *Burnham*, 15 Mass. 144 ; 18 Barb. 312 ; 4 Hill. 86 ; 19 Barb. 649 ; 2 Barb. 114 ; 4 Wheat. 78 ; 6 Wheat. 119 ; 20 Pick. 418 ; 4 Co. 2, 23–31.

The opinion of the court was delivered by

BARRETT, J. The right of action in the suit at law which this suit in chancery seeks to have enjoined, depends on the title of Mr. Ormsby to the shares of stock in question by virtue of his purchase of some of them from the original shareholders, and of the rest of them on sale on execution. That title is purely *legal*, and not equitable, so far as it depends upon the transactions and modes by which he acquired it. It is claimed by the orators that these shares had become forfeited in the hands of the original holders, and had been properly disposed of for non-payment of assessments that had been laid thereon. This presents purely matter of law, in no way involving considerations that give a court of equity cognizance of the subject. If the object of this bill is to set up and enforce a forfeiture, it is altogether outside of the province and functions of a court of equity, as is shown by all the cases and books touching the subject. See Mitford, by Jeremy, marginal pp. 193–197 ; Adams Ch. 2 *et seq ;* Story Eq. § 1319. *Livingston* v. *Tompkins*, 4 Johns. Ch. 431, and cases there cited.

If the purpose is to affect the legal title of Mr. Ormsby by equitable estoppel, that is as available in a court of law as in a

90

court of equity. The kind of estoppel urged by the orator in the argument, is only such as is familiar in courts of law as *estoppel in pais*, and is quite as effectual there, as in a court of equity. The purpose sought to be served by it in this instance, does not warrant resort to a court of equity.

The decree of the chancellor is therefore affirmed, and cause remanded, to be carried into effect by final decree, with costs to the defendant.